Andrea Campbell Davison (VSB No. 78036)
Jonathan M. Harrison II (VSB No. 92911)
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Blvd, Suite 500
Arlington, Virginia 22201
(703) 525-4000

*Counsel for Trina Bengtsson*

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| In re:<br><br>BINGTUAN YIN and<br>XIANGLING KONG,<br>       Debtors. | Case No. 21-10653-KHK<br><br>Chapter 7 |
| TRINA BENGTSSON,<br>       Plaintiff-Creditor<br><br>v.<br><br>BINGTUAN YIN and<br>XIANGLING KONG,<br>       Defendants. | Adv. Proc. No. 21-01043-KHK |

**BRIEF IN SUPPORT OF TRINA BENGTSSON'S
<u>REQUEST FOR DETERMINATION OF DISCHARGE OF DEBT</u>**

In support of her Complaint for Determination of Discharge Debt Pursuant to Section 523(a)(6) of the Bankruptcy Code, Plaintiff-Creditor Trina Bengtsson ("Plaintiff" or "Ms. Bengtsson"), by counsel, states as follows:

**STATEMENT OF FACTS**

A.  <u>Ms. Bengtsson's Employment by the Defendants</u>

1. The Plaintiff is a former employee of Sunnyworld International, Inc. t/a Sunnyworld Preschool ("Sunnyworld"), a preschool located in Bellevue, Washington and (allegedly formerly) owned by Bingtuan Yin and Xiangling Kong (together, the "Debtors" or the "Defendants"). The Plaintiff was hired by the Defendants as the director of Sunnyworld in August 2015. *See* Complaint ¶10, Defendants' Answer ¶10.

2. In January 2017, the Plaintiff informed Defendants that she was pregnant and intended to take maternity leave. Three weeks later, on February 3, 2017, Defendants, through their agent, terminated the Plaintiff's employment. *See* Exhibit D to Complaint (Amended Findings of Fact and Conclusions of Law of the Superior Court of Washington County, ¶2); Exhibit E to Complaint (*Bengtsson v. Sunnyworld International, Inc., et al*, 14 Wash.App.2d 91, ¶2) (2020).

3. Until she announced her pregnancy, the Plaintiff had received positive feedback and two raises as a result of her work performance at Sunnyworld. *See Bengtsson*, 14 Wash.App. at ¶2. The agent expressed to the Plaintiff at her firing that she was being terminated by the Defendants because women in China usually rest before giving birth and suggested that the Plaintiff seek unemployment benefits. *Id.* at ¶3.

4. After protesting her termination and explaining that American women work through their pregnancies, Sunnyworld's agent then informed the Plaintiff that the Defendants took issue with her work performance and made reference to concern about receipts (for company expenses). *Id.* at ¶4.

5.⠀⠀⠀⠀When the Plaintiff sought clarification from the Defendants about her work performance, they raised concerns with enrollment numbers at Sunnyworld and asserted that the board of Sunnyworld had decided to terminate her employment. *Id.* at ¶5.

B.⠀⠀⠀⠀<u>The Jury Trial and Judgment</u>

6.⠀⠀⠀⠀In August 2017, the Plaintiff filed a lawsuit against the Defendants in the Superior Court of Washington for King County (the "Washington Court"), alleging violations of the Washington Law Against Discrimination ("WLAD") for discrimination on the basis of pregnancy/gender/childbirth, retaliation and wrongful termination of employment in violation of public policy. *See* Complaint ¶13, Defendants' Answer ¶13.

7.⠀⠀⠀⠀A seven-day jury trial was conducted between August 20, 2018 and August 30, 2018 in the Washington Court. Following the trial, the jury was given various instructions regarding a finding of discrimination and retaliation under the WLAD and termination in violation of public policy. *See* Complaint ¶14, Defendants' Answer ¶14.

8.⠀⠀⠀⠀The Jury Instructions contain, in relevant part, the following instructions with regard to the Plaintiff's allegations of discrimination, retaliation and wrongful termination:

- <u>Instruction No. 8</u>: When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a preponderance of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case, that the proposition on which that party has the burden of proof is more probably true than not.

- <u>Instruction No. 9</u>: Defendants Sunnyworld International, Inc., Xiangling Kong, and Bingtuan Yin, were employers of Plaintiff Trina Bengtsson as defined under the Washington Law Against Discrimination. Therefore, each of the defendants were prohibited from engaging in unfair employment practices, including discrimination and retaliation.

- <u>Instruction No. 15</u>: Discrimination in employment on the basis of gender, pregnancy, or childbirth is prohibited. It is an unfair

3

practice for an employer, because of gender, pregnancy or childbirth, to refuse to accommodate, hire, promote or take an adverse employment action against a woman.

To establish her discrimination claim, Plaintiff has the burden of proving each of the following propositions:
(1) That Defendants took an adverse employment action against Plaintiff; and
(2) That Plaintiff's gender, pregnancy or childbirth was a substantial factor in Defendants' decision to take the adverse employment action.

If you find from your consideration of all the evidence that each of the propositions stated above has been provided, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants.

- Instruction No. 16: Regarding the discrimination claim in Instruction No. 15, an adverse employment action is one that materially affects the terms, conditions or privileges of employment. Termination from employment is an 'adverse employment action.'

- Instruction No. 17: It is unlawful for an employer to retaliate against a person for opposing what the person reasonably believed to be discrimination on the basis of gender, pregnancy, or childbirth. To establish a claim of unlawful retaliation by Defendants, Plaintiff has the burden of proving each of the following propositions:
(1) That Plaintiff was opposing what she reasonably believed to be discrimination on the basis of gender, pregnancy, or childbirth; and
(2) That a substantial factor in Defendants' decision to take adverse employment action against Plaintiff was Plaintiff's opposing what she reasonably believed to be discrimination or retaliation.

If you find from your consideration of all the evidence that each of the propositions stated above has been provide, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants. Plaintiff does not have to prove that her opposition was the only factor or the main factor in the Defendants' decision, nor does the Plaintiff have to prove that she would not have had an adverse employment action taken against her "but for" her opposition.

4

- Instruction No. 18: Regarding the retaliation claim in Instruction No. 17, the term "adverse" means unfavorable or disadvantageous. An employment action is adverse if it is harmful to the point that it would dissuade a reasonable employee from making a complaint of discrimination or retaliation. Whether a particular action is adverse is judged from the perspective of a reasonable person in the plaintiff's position. Termination from employment is an 'adverse employment action.'

- Instruction No. 20: To recover on her claim of wrongful termination in violation of public policy, Plaintiff has the burden of proving that a substantial factor motivating the employer to terminate her employment was exercising a legal right. If you find from your consideration of all the evidence that each of the propositions stated above has been provide, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants.

- Instruction No. 21: A woman has the legal right to take a leave of absence from work for a period that she is sick or temporarily disabled due to pregnancy and/or childbirth.

- Instruction No. 22: "Substantial factor" means a significant factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision.

- Instruction No. 23: It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered. If your verdict is for the Plaintiff, you must determine the amount of money that will reasonably and fairly compensate her for such damages as you find were proximately caused by the acts of the Defendant(s). If you find for Plaintiff, you should consider the following elements:
  (1) The reasonable value of lost past earnings from the date of the wrongful conduct to the date of trial;
  (2) The reasonable value of lost future earnings;
  (3) The emotional harm to the Plaintiff caused by Defendant(s) wrongful conduct, including emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety or anguish experienced and with reasonable probability to be experienced by Plaintiff in the future.

5

> The burden of proving damages rests with the party claiming them, and it is for you to determine, based upon the evidence, whether any particular element has been proven by a preponderance of the evidence. Any award of damages must be based upon evidence and not upon speculation, guess, or conjecture. The law has not furnished us with any fixed standards by which to measure emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, or anguish. With reference to these matters, you must be governed by your own judgment, by the evidence in the case, and by these instructions.

*See* Jury Instructions, Exhibit B to Complaint.

9. On August 31, 2018, the jury returned a verdict for Plaintiff on all claims, finding that she had proven her claims for discrimination on the basis of gender, pregnancy or childbirth, retaliation and wrongful termination against each Defendant by a preponderance of the evidence. The jury awarded Plaintiff $400,000 in emotional harm damages and $66,430 in damages for past and future earnings. *See* Exhibit C to Complaint, ps' Answer ¶16.

10. On August 31, 2018, the Washington Court awarded judgment in favor of Plaintiff against the Defendants for $466,430.36 for her claims of gender/pregnancy/childbirth discrimination and retaliation in violation of WLAD, and wrongful termination in violation of public policy (the "Judgment"). The Judgment specified that the Washington Court would issue a separate decision on the Plaintiff's award for reasonable attorney's fees, litigation expenses and costs, tax consequences and interest. *See* Exhibit C to Complaint, Defendants' Answer ¶17.

C. <u>The Supplemental Judgment and Findings of Fact</u>

11. On November 16, 2018, the Washington Court entered a supplemental judgment in favor of Plaintiff against Defendants in the amount of $374,431.95 for reasonable attorney's fees, litigation expenses and costs, tax consequences and pre- and post-judgment interest (the "Supplemental Judgment"). *See* Exhibit E to Complaint, Defendants' Answer ¶18.

6

12. Attached as Exhibit B to the Supplemental Judgment is the Washington Court's Amended Findings of Fact and Conclusions of Law Awarding Plaintiff Attorney Fees, Costs, and Offset for Adverse Tax Consequences and Interest. *Id.*

13. In awarding the amounts in the Supplemental Judgment, the Washington Court detailed the following, *inter alia*, regarding the complexity of the underlying case under the WLAD, the Defendants' asserted defenses and positions therein, and the Plaintiff's entitlement to the supplemental awards:

> "8. Defendants' multiple, and often changing, positions drove up the number of hours that counsel spent on many issues in discovery and at trial. These included:
>
> (a) Throughout discovery, summary judgment proceedings and even at trial, Defendants continuously changed or added to their alleged reasons for terminating Ms. Bengtsson's employment. In the end, Defendants had nine shifting reasons for termination.
>
> (b) Defendants asserted a statute of limitations defense that had no legal or factual basis, and refused to withdraw it, requiring Plaintiff to file a motion for partial summary judgment.
>
> (c) Defendants asserted defenses of "waiver," "privilege" and contributory negligence defense, but produced no evidence to support those defenses, and refused to withdraw them, requiring Plaintiff to file a motion for partial summary judgment.
>
> (d) Defendants accused Ms. Bengtsson of embezzlement, without any basis, and asserted and "unclean hands" defense relating to that allegation, even though they did not believe Ms. Bengtsson had used corporate funds for her personal use, requiring Plaintiff to engage in circular discovery efforts and file a motion for partial summary judgment. …
>
> (e) Defendants [Xiangling] Kong and [Bingtuan] Yin denied that they were "employers" under the Washington Law Against Discrimination, requiring Plaintiff to file a motion for partial summary judgment. They finally conceded this issue during trial.
>
> (f) Defendants asserted numerous baseless affirmative defenses, reasonably causing Plaintiff to serve interrogatories and requests

7

for production of documents and a notice of Civil Rule 30(b)(6) deposition to discover the factual basis for those defenses.

9. From the start of this litigation to the end the Defendants repeatedly failed to follow the civil rules. For example:

(a) Defendants failed to timely and completely respond to discovery requests in violation of Civil Rule 33 and 34, requiring Plaintiff to seek several discovery conferences with the defense, file numerous motions to compel and take a third personal deposition of Selina Kong - after defendants produced the "board" meeting minutes during the final days of discovery though they were requested at the time the Complaint was served at the inception of this litigation.

(b) Defendants repeatedly failed to respond to Plaintiff's requests to set depositions, and refused to produce their registered agent, Mei Lei, for deposition, on two occasions, in violation of Civil Rules 30 and 45, requiring Plaintiff to file a motion to compel.

(c) Defendants failed to produce documents "as they are kept in the usual course of business" or "organize and label them to correspond with the categories of the request" and instead produced documents in a scattered, incomplete, messy fashion, some of which were illegible, and all without bates numbers, in violation of Civil Rule 34(b), requiring Plaintiff's counsel and their staff to spend considerably more time organizing and studying documents, communicating with the defense, and requiring Plaintiff to file motions to compile (missing documents and attachments to emails).

(d) Defendant Selina Kong was often non-responsive and at times argumentative and combative during her depositions, in violation of Civil Rule 30, requiring Plaintiff's counsel to spend considerably more time questioning her and also driving up the costs of the case (court reporter time, deposition transcript fees and interpreter time).

(e) In response to Plaintiff's motion for partial summary judgment, Defendants attempted to assert an "after acquired evidence" defense for the first time, without having plead that defense in response to Plaintiff's discovery requests, and without seeking leave to amend their Answer, in violation of Civil Rules 15, 56, 33 and 334, requiring substantial briefing.

  (f) Defendants failed to timely provide copies of their trial exhibits, in violation of the Court's Scheduling Order and King County Local Rule 4, requiring Plaintiff to file a motion to compel.

  (g) Defendants failed to timely disclose their possible primary witnesses for months, in violation of Court's Scheduling Order and King County Local Rule 26, requiring Plaintiff to communicate repeatedly with the defense about the overdue disclosure.

  (h) At trial, Defendants and their counsel repeatedly failed to follow the Court's orders on motions in limine and the Court's oral rulings regarding excluded or limited evidence, requiring Plaintiff to object and considerably lengthening trial.

  (i) Defendants refused to pay the attorney fees and costs ordered by the Court (associated with Plaintiff's discovery motion and the second deposition of Ms. Lei during trial) requiring Plaintiff to file a motion for sanctions.

…

12. Prior to initiating this litigation, Plaintiff sent a letter to Defendants regarding her legal claims and offered to resolve this case. In response, Defendants accused Plaintiff of embezzlement, a very serious accusation about which Plaintiff's counsel had little ability to investigate prior to the initiation of discovery. The only pre-litigation offer the Defendants made was for payment of $1,000 for a mutual release of claims.

…

22. Defendants filed a Motion for New Trial Pursuant to Civil Rule 59, which the Court denied on September 18, 2018, after a full briefing.

…

34. The Court has reviewed the defense arguments [against the award of attorney's fees to Plaintiff] and finds that Defendants' objections are not reliable because they are conclusory, lack specificity and foundation. The Court rejects each of them for these reasons and the reasons stated in the Plaintiff's reply materials."

*See* Supplemental Judgment, Exhibit E to Complaint.

D. <u>Defendants' Appeal and Second Supplemental Judgment</u>

9

14. The Defendants appealed the Judgment and Supplemental Judgment to the Court of Appeals for the State of Washington (the "Appeals Court"), contending the court made evidentiary errors that resulted in prejudice requiring a new trial. *See* Complaint ¶20, Defendants' Answer ¶20.

15. On August 10, 2020, the Appeals Court affirmed the jury's verdict and the Judgment of the Washington Court, in their entirety, finding that the appeal was meritless and awarding the Plaintiff attorney's fees incurred on appeal. *See* Exhibit F to Complaint (*Bengtsson v. Sunnyworld International, Inc., et al*, 14 Wash.App.2d 91) (2020).

16. On February 9, 2021, the Washington Court awarded to Plaintiff a Second Supplemental Judgment in the amount of $70,461.64 for fees and costs associated with the meritless appeal, such amounts having been ordered by the Commissioner of the Appeals Court (the "Second Supplemental Judgment"). *See* Exhibit G to Complaint, Defendants' Answer ¶22.

17. The total principal amount of the judgment awarded by the Washington Court against the Debtors and Sunnyworld, jointly and severally, is $911,323.95, not including post-judgment interest accruing from the date each judgment was entered. *See* Judgment, Supplemental Judgment and Second Supplemental Judgment; Defendants' Answer ¶23; Claims Reg. No. 1-1.

18. The Defendants have failed to pay any amounts on the judgments. The Plaintiff has received to date only *de minimis* amounts garnished from bank accounts held by the Defendants in Washington. *See* Complaint ¶24, Defendants' Answer ¶24.

19. According to the Debtors' Schedules, Sunnyworld has been dissolved. *See* Docket No. 1, SOFA ¶ 27.

E.     <u>Fairfax County Litigation</u>

20. In February 2020, Plaintiff domesticated the Judgment and Supplemental Judgment in the Fairfax County Circuit Court (the "Fairfax Court") where the Debtors resided at the time, upon information and belief. *See* Complaint ¶26, Defendants' Answer ¶26.

21. The Plaintiff instituted and served interrogatories against the Debtors, seeking information regarding the Debtors' assets available for payment on the Judgments. *See* Complaint ¶27, Defendants' Answer ¶27.

22. Over the course of many months, and despite the Fairfax Court's orders to show cause, the Debtors failed to produce subpoenaed documents and appear in court when required. As a result, on December 4, 2020, the Fairfax Court issued a Rule to Show Cause Order. *See* Complaint ¶28, Defendants' Answer ¶28.

23. On January 29, 2021, the Fairfax Court found the Debtors in contempt of court, sanctioned the Debtors in the amount of $2,000.00 for the Plaintiff's reasonable attorney's fees and issued a Capias for the arrest of each Debtor (the "Contempt Order"). *See* Complaint ¶29, Defendants' Answer ¶29.

24. The Debtors were scheduled to appear in Fairfax Court for a continued hearing on the Court's Show Cause Order the day following the Petition Date. On account of the voluntary chapter 7 petition filed by the Debtors, the Fairfax County litigation was automatically stayed. *See* Complaint ¶30, Defendants' Answer ¶30.

F.   The Bankruptcy Case

25. On April 15, 2021, the Debtors filed the above-captioned chapter 7 bankruptcy case. Donald F. King was appointed chapter 7 trustee. *See* Complaint ¶31, Defendants' Answer ¶31.

26. Plaintiff timely filed a Proof of Claim evincing the current outstanding principal balance on the Washington Court judgments of $880,933.11. *See* Claims Reg. No. 1-1.

27. Plaintiff also filed a Proof of Claim evincing the sanctions awarded by the Fairfax Court in the Contempt Order in the amount of $2,000.00. *See* Claims Reg. No. 2-1.

28. On July 9, 2021, the Plaintiff filed the Complaint initiating this action. Adv. Proc. Docket No. 1.

29. On July 3, 2021, through counsel, the Debtors filed an Answer conceding a debt owed to Plaintiff but denying that it constitutes a debt for willful and malicious injury. The Debtors raised no further defenses in the Answer. Adv. Proc. Docket No. 10.

## APPLICABLE LAW

A. <u>Elements of Non-Dischargeability for Willful and Malicious Injury</u>

30. Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> A discharge under 727, 1141, 1228(a) or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (6) for willful and malicious injury by the debtor to another entity or to property of another entity;

31. The United States Supreme Court has concluded that the word willful as used in Section 523(a)(6) modifies the word injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). Thus, non-dischargeability requires that the debtor injured the creditor deliberately and intentionally; it is not enough for the injury be accidental or be caused by the recklessness or negligence of the debtor. *Id.* More specifically, and in interpreting *Geiger*, the Fourth Circuit has found that an injury may be found to be willful "only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *See In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003).

32. The term "malice" means an "act causing injury without just cause or excuse." *See In re Sparrow*, 306 B.R. 812, 838 (Bankr. E.D.Va. 2003).

### BURDEN OF PROOF AND ISSUE PRECLUSION

33. A creditor seeking a determination of non-dischargeability pursuant to § 523(a)(6) of the Bankruptcy Code must prove the applicable elements by a preponderance of the evidence. *See e.g. Combs v. Richardson*, 838 F. 2d 112, 116 (4th Cir. 1988). The bankruptcy court has the exclusive jurisdiction to determine dischargeability; however, the bankruptcy court is not required to redetermine all of the required underlying facts. *Id.*

34. Additionally, issue preclusion, or collateral estoppel, principals apply in Section 523 dischargeability cases. *See e.g. Grogan v. Garner,* 498 U.S. 279, 285-287 (1991) (finding that a Bankruptcy Court may use a prior decision by another court as the basis for a finding of non-dischargeability of debt so long as the standard of proof in the prior case was by a preponderance of the evidence, or higher); *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995); *In re Bundick*, 303 B.R. 90, 101 (Bankr. E.D.Va. 2003).

35. When the prior judgment is rendered in state court, under the Full Faith and Credit Act, the federal court must give a state court judgment the same preclusion effect as it would enjoy under that states law. *McNallen*, 62 F.3d at 624; *Bundick*, 303 B.R. 101. Under Washington law, a party is entitled to issue preclusion by demonstrating the following elements: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. *In re Greger*, 2006 Bankr. LEXIS 4822, *8 (9th Cir. BAP 2006).

36. Here, there is no question that the second and third prongs of issue preclusion are met; there is a final judgment on the merits against the Debtors in favor of the Plaintiff, the same parties to this litigation. The first prong should be satisfied by a review of the Jury Instructions and Special Verdict Form, which make clear that the elements to be proven in this non-dischargeability action were implicit in the jury findings and the judgments of the Washington Court and Appeals Court. *See Hammond v. Gee*, 156 B.R. 291, 293 (Bankr. W.D. Wash. 1993) (holding that under Washington law, issue preclusion prevents parties from denying those facts necessarily found by a state court jury, and finding issue preclusion should be applied to a workplace sexual harassment judgment by the bankruptcy court determining dischargeability).

37. Finally, the fourth prong is satisfied, because the Debtors have had a full and fair opportunity to litigate and therefore are not prejudiced by the issue preclusion. *In re Greger*, 2006 Bankr. LEXIS 4822, *8 (9th Cir. BAP 2006). Throughout years of litigation, the Defendants were represented by at least seven different counsel. Defendants brought various defenses in the underlying action and the trial court or jury rejected each of them, and the defenses again raised on appeal were also rejected by the Court of Appeals. Defendants had a full opportunity to try to prove their alleged legitimate non-discriminatory reasons for terminating Ms. Bengtsson. The jury rejected their contentions and determined that each of the Defendants were motivated by discriminatory and retaliatory animus when they intentionally fired Ms. Bengtsson and caused her damages. The Defendants also raise no affirmative defenses in their Answer to the Complaint initiating this action.

38. The application of collateral estoppel serves many interests, including avoiding duplicative litigation of factual and legal issues already determined by other courts. *Combs,* 838 F. 2d at 116. In particular, in this context, a jury's findings are entitled to particular credibility

and deference by the Bankruptcy Court. *Id.* (finding that the fact-finding of a bankruptcy judge is not preferable to the fact-finding of a jury, that the earlier jury trial was necessarily closer in time to the underlying events, and that the jury has a unique opportunity to weigh witness testimony and resolve disputed questions of fact).

39. Here, this Court should defer to the findings of the jury, the Washington Court, the Appeals Court, and the Fairfax Court. These provide the Court with sufficient facts to make a non-dischargeability ruling in favor of the Plaintiff by a preponderance of the evidence. Further, the Court should apply the principals of issue preclusion and prohibit the Debtors from re-litigating the underlying claims or asserting additional facts or defenses.

## **ARGUMENT**

A. <u>The Plaintiff Suffered an Injury</u>

40. Section 523(a)(6) provides an exception to discharge for "any debt" for willful and malicious injury. Debt is defined in the Bankruptcy Code as "liability on a claim"; the term "claim" includes the right to payment. *See* 11 U.S.C. §101 (5), (12). The Judgment, the Supplemental Judgment, the Second Supplemental Judgment and the Contempt Order each constitute debt owed by the Defendants to the Plaintiff. On account of her unpaid claims against the Debtors awarded by various state courts, Plaintiff plainly suffered an injury and may seek to have such debt determined non-dischargeable.

41. Although the Plaintiff's claim on the Judgment is entirely for damages awarded by the jury, the Supplemental Judgment, Second Supplemental Judgment and Contempt Order contain awards of attorney's fees, costs, interest, and other supplemental amounts. This Court, and others, have found that where the underlying debt is non-dischargeable, so too are the

associated awards of attorneys' fees. *See In re Ward*, 578 B.R. 541, 552 (Bankr. E.D. Va. 2017), *citing In re Brown*, 2016 Bankr. LEXIS 4074, at *50 (Bankr. E.D. Va. Nov. 28, 2016).

B.  <u>The Debtors Willfully Caused Injury to Plaintiff</u>

42. The Plaintiff's claim arises initially from the determination of a Washington state jury that the Debtors discriminated against the Plaintiff on the basis of sex/gender/pregnancy, that the Debtors retaliated against the Plaintiff and that the Debtors wrongfully terminated the Plaintiff's employment in violation of public policy. In the Washington Court, the Plaintiff successfully proved each of these violations by a preponderance of the evidence. *See* Jury Instructions.

43. Here, the key determination to be made is whether, as required by Section 523(a)(6), the Debtors' acts of discrimination, retaliation and wrongful termination constitute acts which were intended to cause the Plaintiff injury. Intentionality is plainly implied in the Jury Instructions used in finding that the Debtors were in violation of the Washington Law Against Discrimination and public policy. The Plaintiff was injured when she was terminated from her employment (such termination being an "adverse employment action" as determined by the jury). How could one accidentally or negligently decide to terminate another's employment? It was a deliberate, premediated act by definition that caused the injury intended.

44. More illustratively, the Washington jury was instructed and found that:

- "Defendants <u>took an adverse employment action</u>" and a substantial factor in "<u>Defendants' decision</u> to take the adverse employment action" was discriminatory. *See* Exhibit B to Complaint, Jury Instruction 15.

- "A substantial factor in <u>Defendants' decision to take adverse employment action</u> against Plaintiff was Plaintiff's opposing what she reasonably believed to be discrimination or retaliation." *See* Exhibit B to Complaint, Jury Instruction 17.

16

- Wrongful termination occurs when "…a substantial factor <u>motivating the employer to terminate [Plaintiff's] employment</u> was her exercising a legal right." *See* Exhibit B to Complaint, Jury Instruction 20.

In each of these instructions, it is implicit that the Debtors' decided, and therefore intended, to terminate the Plaintiff's employment.

45. Judgments for discrimination have often been found inherently willful as required by Section 523(a)(6). *See e.g. In re Goldberg*, 487 B.R. 112, 127 (Bankr. E.D.N.Y. 2013); ("[W]here an employer's deliberate conduct is found to constitute discrimination against an individual employee, it necessarily follows that the employer's intent was to cause injury."); *In re Deluty*, 540 B.R. 41, 50 (Bankr. E.D.N.Y. 2015) ("There is no indication in the state court findings [of discrimination] that the Debtor's actions were anything but intentional"); *In re Benham*, 2008 Bankr. LEXIS 388, at *4 (Bankr. D. Mass., Feb. 11, 2008) ("Because the Defendant intended to discriminate and the discrimination itself constituted an injury to Plaintiff, the …judgment establishes that the Defendant's acts were willful."). This is true even where the injury caused by discrimination is more subjective than termination from employment. *See e.g. In re Spangnola*, 473 B.R. 518, 523 (Bankr. S.D.N.Y. 2012) (finding a workplace sexual harassment judgment to be deemed intentional and willful under Section 523(a)(6)); *In re Gee*, 173 B.R. 189 (9th Cir. BAP 1994) (sex discrimination and withholding of wages was willful).

46. Judgments for retaliation and wrongful termination have also been found willful because they necessarily require deliberate action and an injury. *See e.g. In re Porter,* 375 B.R. 822, 827 (8th Cir. BAP 2007) (finding that retaliatory actions were willful because they require purposeful action); *In re Wilson*, 216 B.R. 258, 268 (Bankr. E.D. Wis. 1997).

47. Further, the findings of the Washington Court, the Appeals Court and the Fairfax Court all support the notion that the Debtors engaged in litigation conduct which was willful in

17

nature and caused intentional harm in the form of legal fees to the Plaintiff. *See* Supplemental Judgment, Second Supplemental Judgment and Contempt Order. The record shows clearly that the Debtors have engaged continually in abusive, deceptive litigation tactics designed not to reach adjudication of the Plaintiff's claims on the merits but instead to hinder, delay and harm the Plaintiff. The Washington Court found that the Debtors accused the Plaintiff of embezzlement despite having no basis to believe she had embezzled funds and continually shifted their defense; the Appeals Court found the Debtors' contentions on appeal meritless; and the Fairfax Court found the Debtors' conduct in violation of court order so egregious that it ordered the Debtors' arrest. Each of these state courts awarded fees and costs for the Debtors' conduct. Summarily, each part of the Plaintiff's claim arises from the Debtors' willful acts, intended to cause harm to the Plaintiff, and satisfies the "willful" prong of Section 523(a)(6).

C.  The Debtors Acted with Malice

48. The jury's findings also clearly and sufficiently show that the Debtors acted maliciously in causing injury to the Plaintiff – that is, without just cause or excuse. As employers under Washington law, the Debtors were prohibited from engaging in unfair employment practices including discrimination and retaliation. *See* Jury Instructions, ¶ 9. They were plainly found to have engaged these unfair practices.

49. As detailed in the record, the Debtors have also engaged in years of litigation seeking to justify the termination of Plaintiff's employment for a non-discriminatory reason. *See* Supplemental Judgment, Second Supplemental Judgment. The Washington Court detailed that the Debtors offered nine shifting reasons for terminating the Plaintiff's employment; after six days of trial, the jury found that the Debtors' actions were discriminatory, retaliatory and wrongful. *See* Special Verdict Form. In doing so, the jury necessarily rejected Defendants'

18

excuse for terminating Ms. Bentsson. Further, the Appeals Court found that no challenged evidentiary ruling was prejudicial to this finding. *See Bengtsson*, 14 Wash.App. 2d at 112. The Debtors also have no cause or excuse – other than to avoid their own liability – to have engaged in years of unnecessary, abusive litigation and violation of court rules. Thus, the Debtors have acted in a manner that plainly satisfies the "malicious" prong of Section 526(a)(6).

D.  CONCLUSION

49. For each of the reasons stated above, and based on the findings of the jury, the Washington Court, the Appeals Court and the Fairfax Court, this Court should find that the Debtors caused willful and malicious injury to the Plaintiff and that the Plaintiff's debts should not be discharged pursuant to 11 U.S.C. §523(a)(6).

**WHEREFORE**, the Plaintiff Trina Bengtsson respectfully requests entry of an Order:

(a) On COUNT I: declaring all debt owed to her by the Debtors is not dischargeable by the Debtors to §523(a)(6) of the Bankruptcy Code; and

(b) Granting other and further relief as is just and appropriate.

Dated: January 20, 2022

*/s/ Andrea Campbell Davison*
Andrea Campbell Davison (VSB No. 78036)
Jonathan M. Harrison II (VSB No. 92911)
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Blvd., Suite 500
Arlington, Virginia 22201
(703) 525-4000
(703) 525-2207 (Fax)
adavison@beankinney.com
jharrison@beankinney.com

*Counsel for Trina Bengtsson*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this January 20, 2022, a true and correct copy of the foregoing Brief in Support was served via the Court's CM/ECF service on all parties entitled to receive notice in the above-captioned adversary proceeding. Additionally, a true and correct copy of the Brief has been served via U.S. mail on the Debtors at the address submitted to the Bankruptcy Court:

Bingtuan Yin
Xiangling Kong
4510 Chateau Road
Orlando, Florida 32808

                                            */s/ Andrea Campbell Davison*
                                            Andrea Campbell Davison