# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| In re: | |
| BINGTUAN YIN<br>XIANGLING KONG, | Case No. 21-10653-KHK |
| Debtors | Chapter 7 |
| | |
| TRINA BENGTSSON | |
| Plaintiff | |
| v. | Adv. Proc. No. 21-01043 |
| BINGTUAN YIN<br>XIANGLING KONG, | |
| Defendants | |

## MEMORANDUM OPINION

Plaintiff Trina Bengtsson (the "Plaintiff" or "Ms. Bengtsson") brings this action asserting that the debt owed to her by Defendants Bingtuan Yin and Xiangling Kong (the "Defendants" or "Debtors") is not dischargeable under § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) excepts from a debtor's discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Plaintiff maintains that the elements of § 523(a)(6) have been proven in litigation already concluded in the Superior Court of Washington for King County, (the "Washington Court") and that the doctrine of collateral estoppel requires this Court to find the Plaintiff's damages non-dischargeable. The Defendants deny that any of the facts as alleged in the Complaint[1] constitute willful and malicious conduct under 11 U.S.C § 523 (a)(6). The parties have consented to have the matter decided on the pleadings of record. Having

---

[1] Docket No. 1; Cited herein as "Compl."

reviewed the pleadings, for the reasons set forth in this Memorandum Opinion, the Court holds that the debt owed to the Plaintiff by the Defendants is nondischargeable.

### Findings of Fact

The following facts are not genuinely in dispute.

The Plaintiff is a former employee of Sunnyworld International, Inc., ("Sunnyworld") a preschool located in Bellevue, Washington and formerly owned by the Debtors. She was hired by the Defendants as director of the preschool in August 2015. In January 2017 the Plaintiff informed the Defendants that she was pregnant and intended to take maternity leave. Three weeks later, on February 3, 2017, the Defendants through an agent, terminated the Plaintiff's employment. Compl., p. 3. Before announcing her pregnancy, the Plaintiff had received positive reviews and raises for her work performance. Ex. E[2] – Supplemental Judgment, p. 11.

When she was fired, the Defendants' agent told the Plaintiff that women in China take time off work to rest before giving birth. When the Plaintiff protested her termination and explained that American women usually work through their pregnancies, she was told that she was terminated because her work performance was unsatisfactory. *Bengtsson v. Sunnyworld International, Inc*., et al, 469 P. 3d 339, 343 (Wash.App. Div. 1 2020).

Subsequently, the Plaintiff filed a lawsuit against the Defendants in the Washington Court alleging violations of the Washington Law Against Discrimination ("WLAD") for discrimination on the basis of pregnancy/gender/childbirth, retaliation, and wrongful termination of employment in violation of public policy. A seven-day jury trial followed. The instructions below were given to the jury:

- Instruction No. 8: When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a

---

[2] References to Ex. and Exhibit are to the Exhibits found at Docket No. 1. The same Exhibits were also refiled at Docket No. 22 with numerical labeling.

preponderance of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case, that the proposition on which that party has the burden of proof is more probably true than not.

- Instruction No. 9: Defendants Sunnyworld International, Inc., Xiangling Kong, and Bingtuan Yin, were employers of Plaintiff Trina Bengtsson as defined under the Washington Law Against Discrimination. Therefore, each of the defendants were prohibited from engaging in unfair employment practices, including discrimination and retaliation.

- Instruction No. 15: Discrimination in employment on the basis of gender, pregnancy, or childbirth is prohibited. It is an unfair practice for an employer, because of gender, pregnancy or childbirth, to refuse to accommodate, hire, promote or take an adverse employment action against a woman.

To establish her discrimination claim, Plaintiff has the burden of proving each of the following propositions:

(1) That Defendants took an adverse employment action against Plaintiff; and

(2) That Plaintiff's gender, pregnancy or childbirth was a substantial factor in Defendants' decision to take the adverse employment action.

If you find from your consideration of all the evidence that each of the propositions stated above has been provided, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants.

- Instruction No. 16: Regarding the discrimination claim in Instruction No. 15, an adverse employment action is one that materially affects the terms, conditions or privileges of employment. Termination from employment is an 'adverse employment action.'

- Instruction No. 17: It is unlawful for an employer to retaliate against a person for opposing what the person reasonably believed to be discrimination on the basis of gender, pregnancy, or childbirth. To establish a claim of unlawful retaliation by Defendants, Plaintiff has the burden of proving each of the following propositions:

(1) That Plaintiff was opposing what she reasonably believed to be discrimination on the basis of gender, pregnancy, or childbirth; and

(2) That a substantial factor in Defendants' decision to take adverse employment action against Plaintiff was Plaintiff's opposing what she reasonably believed to be discrimination or retaliation.

If you find from your consideration of all the evidence that each of the propositions stated above has been provided, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants. Plaintiff does not have to prove that her opposition was the only factor or the main factor in the Defendants' decision, nor does the Plaintiff have to prove that she would not have had an adverse employment action taken against her "but for" her opposition.

- Instruction No. 18: Regarding the retaliation claim in Instruction No. 17, the term "adverse" means unfavorable or disadvantageous. An employment action is adverse if it is harmful to the point that it would dissuade a reasonable employee from making a complaint of discrimination or retaliation. Whether a particular action is adverse is judged from the perspective of a reasonable person in the plaintiff's position. Termination from employment is an 'adverse employment action.'
- Instruction No. 20: To recover on her claim of wrongful termination in violation of public policy, Plaintiff has the burden of proving that a substantial factor motivating the employer to terminate her employment was exercising a legal right. If you find from your consideration of all the evidence that each of the propositions stated above has been provided, your verdict should be for the Plaintiff on this claim. On the other hand, if either of the propositions has not been proved, your verdict should be for the Defendants.
- Instruction No. 21: A woman has the legal right to take a leave of absence from work for a period that she is sick or temporarily disabled due to pregnancy and/or childbirth.
- Instruction No. 22: "Substantial factor" means a significant factor in bringing about the employer's decision. "Substantial factor" does not mean the only factor or the main factor in the challenged act or decision.
- Instruction No. 23: It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered. If your verdict is for the Plaintiff, you must determine the amount of money that will reasonably and fairly compensate her for such damages as you find were proximately caused by the acts of the Defendant(s). If you find for Plaintiff, you should consider the following elements:

(1) The reasonable value of lost past earnings from the date of the wrongful conduct to the date of trial.

(2) The reasonable value of lost future earnings.

(3) The emotional harm to the Plaintiff caused by Defendant(s) wrongful conduct, including emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety or anguish experienced and with reasonable probability to be experienced by Plaintiff in the future.

The burden of proving damages rests with the party claiming them, and it is for you to determine, based upon the evidence, whether any particular element has been proven by a preponderance of the evidence. Any award of damages must be based upon evidence and not upon speculation, guess, or conjecture. The law has not furnished us with any fixed standards by which to measure emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, or anguish. With reference to these matters, you must be governed by your own judgment, by the evidence in the case, and by these instructions.

Ex. B – Jury Instructions, pp. 11-26.

The jury returned a verdict in favor of the Plaintiff finding she had proven her claims for discrimination against each Defendant by a preponderance of the evidence. Ex. C. The Plaintiff was awarded $400,000 in damages for emotional harm and $66,430 in damages for past and future earnings. Thereafter, the Washington Court awarded the Plaintiff a Judgment against the Defendants in the amount of $466,430.36 for her claims. Ex. D – Judgment Summary.

The Judgment specified that the court would issue a separate decision on the Plaintiff's award for reasonable attorney's fees and other costs and expenses. *Id*. Three months later, the Washington Court entered a Supplemental Judgment in the Plaintiff's favor against the Defendants in the amount of $374,431.95 for reasonable attorney's fees, litigation costs, tax consequences and pre- and post-judgement interest. Ex. E – Supplemental Judgment. Attached to the Supplemental Judgment is Exhibit B entitled Amended Findings of Fact and Conclusions of Law. The Washington Supreme Court requires the entry of these findings and conclusions in fee award decisions. *Mahler v. Szucs*, 135 Wn.2d 398, 435 (1998). Exhibit B explains in great detail the reasons why the Plaintiff is entitled to the award. It states:

> "8. Defendants' multiple, and often changing, positions drove up the number of hours that counsel spent on many issues in discovery and at trial. These included:
>
> (a) Throughout discovery, summary judgment proceedings and even at trial, Defendants continuously changed or added to their alleged reasons for terminating Ms. Bengtsson's employment. In the end, Defendants had nine shifting reasons for termination.
>
> (b) Defendants asserted a statute of limitations defense that had no legal or factual basis, and refused to withdraw it, requiring Plaintiff to file a motion for partial summary judgment.
>
> (c) Defendants asserted defenses of "waiver," "privilege" and a contributory negligence defense, but produced no evidence to support those defenses, and refused to withdraw them, requiring Plaintiff to file a motion for partial summary judgment.

(d) Defendants accused Ms. Bengtsson of embezzlement, without any basis, and asserted an "unclean hands" defense relating to that allegation, even though they did not believe Ms. Bengtsson had used corporate funds for her personal use, requiring Plaintiff to engage in circular discovery efforts and file a motion for partial summary judgment.

(e) Defendants [Xiangling] Kong and [Bingtuan] Yin denied that they were "employers" under the Washington Law Against Discrimination, requiring Plaintiff to file a motion for partial summary judgment. They finally conceded this issue during trial.

(f) Defendants asserted numerous baseless affirmative defenses, reasonably causing Plaintiff to serve interrogatories and requests for production of documents and a notice of Civil Rule 30(b)(6) deposition to discover the factual basis for those defenses.

9. From the start of this litigation to the end the Defendants repeatedly failed to follow the civil rules. For example:

(a) Defendants failed to timely and completely respond to discovery requests in violation of Civil Rules 33 and 34, requiring Plaintiff to seek several discovery conferences with the defense, file numerous motions to compel and take a third personal deposition of Selina Kong after Defendants produced the "board" meeting minutes during the final days of discovery even though they were requested at the time the Complaint was served at the inception of this litigation.

(b) Defendants repeatedly failed to respond to Plaintiff's requests to set depositions, and refused to produce their registered agent, Mei Lei, for deposition, on two occasions, in violation of Civil Rules 30 and 45, requiring Plaintiff to file a motion to compel.

(c) Defendants failed to produce documents "as they are kept in the usual course of business" or "organize and label them to correspond with the categories of the request" and instead produced documents in a scattered, incomplete, messy fashion, some of which were illegible, and all without bates numbers, in violation of Civil Rule 34(b), requiring Plaintiff's counsel and their staff to spend considerably more time organizing and studying documents, communicating with the defense, and requiring Plaintiff to file motions to compel (missing documents and attachments to emails).

(d) Defendant Selina Kong was often non-responsive and at times argumentative and combative during her depositions, in violation of Civil Rule 30, requiring Plaintiff's counsel to spend considerably more time

questioning her and also driving up the costs of the case (court reporter time, deposition transcript fees and interpreter time).

(e) In response to Plaintiff's motion for partial summary judgment, Defendants attempted to assert an "after acquired evidence" defense for the first time, without having plead that defense in response to Plaintiff's discovery requests, and without seeking leave to amend their Answer, in violation of Civil Rules 15, 56, 33 and 334, requiring substantial briefing.

(f) Defendants failed to timely provide copies of their trial exhibits, in violation of the Court's Scheduling Order and King County Local Rule 4, requiring Plaintiff to file a motion to compel.

(g) Defendants failed to timely disclose their possible primary witnesses for months, in violation of Court's Scheduling Order and King County Local Rule 26, requiring Plaintiff to communicate repeatedly with the defense about the overdue disclosure.

(h) At trial, Defendants and their counsel repeatedly failed to follow the Court's orders on motions in limine and the Court's oral rulings regarding excluded or limited evidence, requiring Plaintiff to object and considerably lengthening the trial.

(i) Defendants refused to pay the attorney fees and costs ordered by the Court (associated with Plaintiff's discovery motion and the second deposition of Ms. Lei during trial) requiring Plaintiff to file a motion for sanctions.

…

12. Prior to initiating this litigation, Plaintiff sent a letter to Defendants regarding her legal claims and offered to resolve this case. In response, Defendants accused Plaintiff of embezzlement, a very serious accusation about which Plaintiff's counsel had little ability to investigate prior to the initiation of discovery. The only pre- litigation offer the Defendants made was for payment of $1,000 for a mutual release of claims.

…

22. Defendants filed a Motion for New Trial Pursuant to Civil Rule 59, which the Court denied on September 18, 2018, after a full briefing.

…

34. The Court has reviewed the defense arguments [against the award of attorney's fees to Plaintiff] and finds that Defendants' objections are not reliable because they are conclusory, lack specificity and foundation.

7

> The Court rejects each of them for these reasons and the reasons stated in the Plaintiff's Reply materials."

Ex. E – Exhibit B, pp. 12-15, 16 and 18.

The Defendants appealed the Judgment and Supplemental Judgment to the Court of Appeals for the State of Washington (the "Appeals Court"), contending that the trial court made evidentiary errors that resulted in prejudice requiring a new trial. The Appeals Court affirmed the jury's verdict and the Judgments finding that the appeal was meritless and awarding the Plaintiff attorney's fees incurred on appeal. *Bengtsson v. Sunnyworld International, Inc., et al*, 469 P. 3d at 343. Thereafter, the Washington Court awarded Plaintiff a Second Supplemental Judgment in the amount of $70,461.64 for fees and costs associated with the meritless appeal as ordered by the Commissioner of the Court of Appeals. Ex. G - Second Supplemental Judgment.

The total of the Judgment awards against the Defendants is $911,323.95, not including post-judgment interest accruing from the date each Judgment was entered. Compl., p. 6; Doc. No. 10 - Answer, p. 4. The Plaintiff filed a proof of claim in this bankruptcy for $855,447.53. See Register of Claims, Proof of Claim No. 1-1. The difference between the total amount of the Judgments and the proof of claim value is the amount the Plaintiff received in garnished funds from the Defendants while they still lived in Washington. Compl., p. 7; Answer, p. 4.

At some point, the Debtors moved to Fairfax County, Virginia. In February 2020, the Plaintiff domesticated the Judgments in the Fairfax County Circuit Court (the "Fairfax Court"). Although Ms. Bengtsson took steps to collect in the Fairfax Court, her efforts were repeatedly thwarted by the Defendants. Eventually, the Fairfax Court issued a Rule to Show Cause against the Defendants, issued sanctions in the amount of $2,000 for Plaintiff's attorney's fees and issued a Capias for the arrest of each Defendant for contempt of court. Ex. H – Rule to Show Cause

Order; Ex. I – Contempt Order. This bankruptcy was filed the day before the Defendants were scheduled to appear in the Fairfax Court for a hearing on the Show Cause Order.

## Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334(a) and the general order of reference entered by the District Court for the Eastern District of Virginia on August 15, 1984. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue of this chapter 7 case and this adversary proceeding is proper under 28 U.S.C. §§ 1408 and 1409. This is an action under Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure for a determination that debts owed to the Plaintiff by the Debtors are nondischargeable under 11 U.S.C. § 523(a)(6).

## Conclusions of Law

The doctrine of collateral estoppel, or "issue preclusion," prohibits the relitigating of an issue of fact or law in a different action by a party when that party had "a full and fair opportunity to litigate the issue in the previous case. *Johnson v. Stemple (In re Stemple)*, 361 B.R. 778, 795 (Bankr. E.D. Va. 2007). The Supreme Court has concluded that principles of collateral estoppel apply in dischargeability proceedings in bankruptcy. See *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991) (finding that a bankruptcy court may use a prior decision by another court as the basis for a finding of non-dischargeability of debt so long as the standard of proof in the prior case was by a preponderance of the evidence or higher).

When determining whether a state court judgment may collaterally estop litigation in a bankruptcy court, the collateral estoppel law of the state issuing the judgment will apply. *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006). In this case, the underlying Judgments were rendered by a Washington Court, so the Washington law of collateral estoppel

9

applies. Under Washington law, a party is entitled to issue preclusion by demonstrating the following elements: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied. *Greger v. Holliday*, (*In re Greger*), 2006 Bankr. LEXIS 4822, *8 (9th Cir. BAP 2006).

The second and third elements of issue preclusion under Washington law are satisfied here because the Judgment Order and Supplemental Orders are final on the merits and the parties in dispute are the same as in the prior litigation. The fourth element is met because the Defendants are not prejudiced by the application of issue preclusion in this case. In their Answer, the Defendants do not dispute any of the facts on which this Court relies in determining whether the debt is non-dischargeable except to state that none of the facts form the "basis for a finding of willful and malicious injury". In their letter to the Court the Debtors state they have lost their business, suffer from poor health, have limited income, and cannot afford to hire an attorney to represent them in this proceeding. Doc. No. 32 - Letter. Nevertheless, it is clear from the record that the Defendants had a full and fair opportunity to defend against the allegations made in the Complaint in the Washington courts. They were represented by counsel at the jury trial and on appeal. The fact that they are not represented by counsel in this adversary proceeding alone is insufficient cause to conclude that an injustice would ensue if the doctrine of collateral estoppel is applied in this instance.

The remaining question is whether the issues previously decided are identical to the issues before this Court. Specifically, to satisfy the first element, this Court must find that the Washington Court determined that the Defendants caused an injury to the Plaintiff by acting

willfully and maliciously. To make this determination the Court looks to the factual determinations the jury made in reaching its verdict, the surrounding circumstances and whether those factual findings are sufficient to satisfy the requirements of § 523(a)(6). *In re Basl*, No. 17-32341-KLP, 2018 WL 1886571, at *5 (Bankr. E.D. Va. Apr. 18, 2018).

To successfully prevail on an objection to dischargeability under § 523(a)(6), a creditor must prove three elements: "(1) the debtor caused an injury; (2) the debtor's actions were willful; and (3) ... the debtor's actions were malicious." *Ocean Equity Grp., Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010) quoting *E.L. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 834 (Bankr. E.D. Va. 2003). Ms. Bengtsson contends that the courts in Washington have already adjudicated the three elements required under § 523(a)(6) and asserts that their rulings satisfy the standards necessary to prove these elements.

The Supreme Court has concluded that non-dischargeability requires that the debtors injured the creditor deliberately and intentionally. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998). The Fourth Circuit has concluded that an injury may be found to be willful "only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result. *In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003). The term "malice" means an "act causing injury without just cause or excuse." *In re Sparrow*, 306 B.R. at 838. Where the underlying debt is non-dischargeable, so too are the associated awards of attorneys' fees. *In re Uzaldin*, 418 B.R. 166, 172 (Bankr. E.D. Va 2009) *citing Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743 (4th Cir. 1990).

In this case, the Washington Court jury determined that when the Defendants fired Ms. Bengtsson, the Debtors discriminated against the Plaintiff on the basis of sex/gender/pregnancy, and that they retaliated against the Plaintiff and wrongfully terminated her employment in violation

11

of public policy. As is clear by the specificity of the jury instructions in Exs. B and C, the jury determined that the Defendants intended to fire the Plaintiff and that the Plaintiff was injured when she was terminated from her employment - such termination being an "adverse employment action". It found that:

- "Defendants took an adverse employment action" and a substantial factor in "Defendants' decision to take the adverse employment action" was discriminatory. Ex. B, Jury Instruction 15.

- "A substantial factor in Defendants' decision to take adverse employment action against Plaintiff was Plaintiff's opposing what she reasonably believed to be discrimination or retaliation." Ex. B, Jury Instruction 17.

- Wrongful termination occurs when "…a substantial factor motivating the employer to terminate [Plaintiff's] employment was her exercising a legal right." Ex. B, Jury Instruction 20.

Judgments for discrimination have been found to be inherently willful as required by § 523(a)(6). See *In re Goldberg*, 487 B.R. 112, 127 (Bankr. E.D.N.Y. 2013) (holding "where an employer's deliberate conduct is found to constitute discrimination against an individual employee, it necessarily follows that the employer's intent was to cause injury."); see also *Bernal v. Benham (In re Benham)* Adv. Pro. No. 07-04069, 2008 Bankr. LEXIS 388, at *4 (Bankr. D. Mass., Feb. 11, 2008) (holding that because the defendant intended to discriminate and the discrimination itself constituted an injury to plaintiff, the …judgment establishes that the defendant's acts were willful). Judgments for retaliation and wrongful termination have also been found to be willful because they necessarily require deliberate action and an injury. *In re Porter*, 375 B.R. 822, 827 (B.A.P. 8th Cir. 2007), aff'd, 539 F.3d 889 (8th Cir. 2008) (finding that retaliatory actions were willful because they require purposeful action). This Court is persuaded by the reasoning espoused in the *Goldberg, Benham* and *Porter* cases and finds that the

Washington Court determined that the Defendants in this case willfully caused injury to the Plaintiff in violation of her rights.

Other cases in this jurisdiction have addressed when malice may be attributed to a debtor's conduct for purposes of § 523(a)(6). The court in *Reed v. Owens* determined that a debtor acts with malice when "[the] debtor's injurious act was done deliberately, intentionally and with knowing disregard for [the] plaintiff's rights." *Reed v. Owens (In re Owens)*, 449 B.R. 239, 255 (Bankr. E.D. Va. 2011). Malice may also be demonstrated from the implications of the debtor's behavior, "as well as a presentation of the surrounding circumstances." *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001).

In this case the record is replete with examples of Defendants' conduct that caused the Plaintiff to suffer damages. They employed extraordinary tactics to justify the termination of the Plaintiff's employment for a non-discriminatory reason. Indeed, the Debtors' exploits are described with particularity in the Findings of Facts attached as Exhibit B to the Supplemental Judgment awarding the Plaintiff her attorney's fees. By finding in favor of the Plaintiff, the Washington Court jury necessarily rejected all of the Defendants' proffered excuses for terminating Ms. Bengtsson. It found that the Debtors accused Ms. Bengtsson of embezzlement despite having no basis to believe she had embezzled funds and continually shifted their defenses. The Appeals Court found no challenged evidentiary ruling was prejudicial to the finding of liability and that the Debtors' contentions on appeal were meritless. The Fairfax Court found the Debtors' conduct in violation of court orders so egregious that it ordered the Debtors' arrest. In short, each part of the Plaintiff's claim arises from the Debtors' willful acts, intended to cause harm to the Plaintiff, and satisfies the "willful" and "malicious" prongs of § 523(a)(6).

In summary, the jury instructions clearly show that the Defendants received a full and fair hearing on the issue of liability for discrimination, retaliation, and wrongful termination. The Defendants were found liable for intentionally causing injury to the Plaintiff by a preponderance of the evidence, and this Court infers willfulness and maliciousness from the jury's factual findings and from the Debtors' behavior throughout the litigation process. Accordingly, after reviewing the full record this Court finds that the elements of § 523(a)(6) have been proven in litigation already concluded in the Washington Court and the Fairfax Court and that the doctrine of collateral estoppel requires this Court to find the Plaintiff's damages and all related expenses non-dischargeable.

A separate Order consistent with this Opinion will be issued.

Date: Aug 5 2022

/s/ Klinette H Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Entered On Docket: Aug 5 2022

Mailed copies to:

Bingtuan Yin Xiangling Kong
4510 Chateau Road
Orlando, Florida 32808
*Debtor*

Xiangling Kong
4510 Chateau Road
Orlando, Florida 32808
*Debtor*

Electronic copy to:

Andrea Campbell Davison
*Counsel to Trina Bengtsson*